IIX. TO THE EXTENT THAT DAVIS'S NAME WAS OMITTED FROM SOME ABSENTEE BALLOTS, SUCH OMISSION WAS NOT GROUNDS FOR INVALIDATING THE ELECTION RESULTS BECAUSE THE OMISSION WAS CORRECTED IN SUFFICIENT TIME BEFORE THE GENERAL ELECTION, AND DAVIS HAS WAIVED ANY CHALLENGE TO THIS OMISSION BY FAILING TO SPECIFY THE NUMBER OF VOTES AFFECTED

A. SCOPE OF REVIEW

Prado hereby incorporates the statement of the scope of review set forth in Argument I of this Answering Brief.

B. MERITS OF THE ARGUMENT

The omission of Davis's name from some absentee ballots did not affect the vote count because the omission was corrected prior to the general election. The seventh paragraph of Davis's affidavit contends that the Department of Elections "acted in concert to deprive [Davis] of ballot access" because his name was omitted from some absentee ballots. (AOB 10) Davis cites a letter from the Department dated October 18, 2004, which was two weeks before the general election. (B27) That document is a generic form letter stating that a name was omitted from the ballot. The letter is addressed to voters generally, not Davis specifically. (B27) Furthermore, because this letter was sent two weeks before the general election, the omission was promptly corrected in sufficient time before the final votes were cast. Alternatively, even if the omission of Davis's name had affected the vote count, Davis waived any such challenge when he declined to specify in his Petition the number of votes affected by this omission, as required by Superior Court Civil Rule 109(4)(b).

IX. THE DEPUTY ATTORNEY GENERAL'S CONSTRUCTION OF ARTICLE II, SECTION 14, AND ARTICLE XV, SECTION 5, OF THE DELAWARE CONSTITUTION WAS CORRECT

A. SCOPE OF REVIEW

Prado hereby incorporates the statement of the scope of review set forth in Argument I of this Answering Brief.

B. MERITS OF THE ARGUMENT

Deputy Attorney General Woolfolk's construction of Del. Const., Art. II, § 14 and Art. XV, § 5 was correct. The eighth paragraph of Davis's affidavit refers to a letter of Deputy Attorney General Woolfolk dated October 21, 2004. (AOB 10) According to Davis, that letter "failed to apply an adequate interpretation of the constitution and investigate the issues." (AOB 10) That letter was in response to Davis's letter of October 10 to the Attorney General's office, in which Davis, relying upon *Opinion of the Justices*, 672 A.2d 1 (Del. 1995), challenged Prado's candidacy on the following two grounds: (1) that Prado's candidacy for City Council office violates Del. Const., Art. XV, § 5, by contravening the separation of powers doctrine, and (2) that Prado's candidacy constitutes a "dual public office" in violation of Del. Const., Art. II, § 14. (B28) Although she cautioned that the Attorney General's office does not give legal advice to private citizens, Deputy Attorney General Woolfolk's October 21 letter responded substantively to each of Davis's concerns. (B29) First, in response to the alleged violation of Del. Const., Art. XV, § 5, Woolfolk explained that this section does not bear upon Davis's claim about violation of the separation of powers doctrine, but only states that public officers shall hold office until their successors are duly qualified. (B29) Second, in response to Davis's

claim of violation of Del. Const., Art. II, § 14, Woolfolk explained that this section only applies to members of the Delaware General Assembly. (B29)

In response to the argument asserted in the eighth paragraph of Davis's affidavit, Prado hereby incorporates (and concurs with) the constitutional interpretations set forth in the Deputy Attorney General's October 21 letter.

X. DAVIS'S UNSUPPORTED ALLEGATIONS OF VIOLATIONS OF SECTIONS 40-58 AND 40-61 OF THE CITY PERSONNEL CODE, EVEN IF PROVEN, ARE NOT GROUNDS FOR CONTESTING THE WILMINGTON CITY COUNCIL ELECTION

A. SCOPE OF REVIEW

Prado hereby incorporates the statement of the scope of review set forth in Argument I of this Answering Brief.

B. MERITS OF THE ARGUMENT

Violations of the City Personnel Code, even if proven, are not legal grounds for setting aside the results of a City Council election. The ninth paragraph of Davis's affidavit contends that Prado violated Section 40-58 of the City Code[10] by declaring his candidacy for City Council office in June of 2004, while he was still employed as an appointee of the executive branch. (AOB 10) Davis quotes 40-58(a) verbatim, which states: "[a] city employee shall not engage in any employment, activity or enterprise that is inconsistent, incompatible or in conflict with his or her duties, functions or responsibilities as a city employee." (AOB 10) This sub-section does not prohibit an executive appointee from running for public office during non-working hours.

Davis also contends that Prado used "city equipment" in his election campaign (though he does not specify what city equipment), in violation of "Section 60-1". (AOB 10) Presumably, Davis is attempting to cite Section 40-61(a) of the City Personnel Code. That section states: "[e]xcept as authorized by the department head or commissioner, no city-owned equipment, autos, trucks, instruments, tools, supplies, machines

---

[10]Davis cites Section 40-58 of the City Charter, however, no such section number exists in the Charter. Davis then quotes sub-section (a) of Section 40-58 of the City Code, which confirms that he intended to cite the Code and not the Charter.

or any other item which is the property of the city shall be used by any employee for personal use or while such employee is engaged in any outside employment or activity, whether for compensation or otherwise." If Davis is alleging that Prado used any such City equipment in his campaign, and even if Davis could support these allegations, he cites no legal authority to hold that violations of the City Personnel Code are grounds for setting aside an election.

XI. THE FEDERAL HATCH ACT DOES NOT APPLY TO PRADO BECAUSE HE WAS NOT A "COVERED EMPLOYEE" DURING HIS CANDIDACY IN THE PARTISAN ELECTION FOR CITY COUNCIL OFFICE, AND EVEN IF IT DID APPLY, DELAWARE STATE COURTS DO NOT HAVE JURISDICTION TO DECIDE CLAIMS ARISING UNDER THAT FEDERAL STATUTE

A. SCOPE OF REVIEW

Prado hereby incorporates the statement of the scope of review set forth in Argument I of this Answering Brief.

B. MERITS OF THE ARGUMENT

Prado was not subject to the Hatch Act because his former employment in the City's executive branch was not federally funded, nor did he work with any federally funded programs. Nonetheless, Paragraphs 12 and 13 of Davis's affidavit contend that Prado's candidacy for City Council office, while contemporaneously employed in the City's executive branch, violated the Hatch Act. (AOB 9) This contention is based upon Davis's unsupported assumption that Prado's job as a Constituent Services Officer was either federally funded, or entailed principal employment in connection with programs financed by federal funds.

The Hatch Act, 15 U.S.C. § 1501 et seq., prohibits a "covered employee" from running for public office in partisan elections. The term "covered employee" is limited to employees who are "principally employed in connection with programs financed in whole or in part by loans or grants of the United States or a federal agency." *Id.* at § 1501(4). The Third Circuit confirmed this limited construction of the term "covered employee" in *In re Higginbotham,* 1965 U.S. App. LEXIS 6894, *5-6 (3d Cir. 1965), wherein that Court explained: "Nowhere does it appear that the prohibitions of [Section 1501(4)] were intended to touch the conduct of a state officer whose principal employment is other than with

a federally financed agency." *See also Williams v. United States Merit Sys. Protection Bd.*, 55 F.3d 917, 920 (4th Cir. 1995) (recognizing that an "employee of a state [or local] agency is subject to the Hatch Act if, as a normal and foreseeable incident to his or her principal position or job, he or she performs duties in connection with an activity financed in whole or part by federal funds.").

Even if the Hatch Act did apply, neither this Court nor the lower court would have jurisdiction to resolve any claims arising under that federal law. According to 5 U.S.C. § 1508, federal claims arising under the Hatch Act must first be submitted to the Merit Systems Protection Board. The final decision of the Board may then be appealed to the federal district court in which the state or local employee resides. Thus, there is no remedy in Delaware state courts for Davis's unsupported allegations of Prado's violations of the Hatch Act.

## XII. PRADO WAS NOT DEEMED "ELECTED" AS OF THE DATE OF THE SEPTEMBER PRIMARY ELECTION, THEREFORE, PRADO'S PRE-INAUGURATION EMPLOYMENT IN THE CITY'S EXECUTIVE BRANCH DID NOT VIOLATE THE SEPARATION OF POWERS DOCTRINE NOR DID IT VIOLATE THE DELAWARE CONSTITUTIONAL PROVISIONS APPLICABLE TO THE THREE BRANCHES OF STATE GOVERNMENT

### A. SCOPE OF REVIEW

Prado hereby incorporates the statement of the scope of review set forth in Argument I of this Answering Brief.

### B. MERITS OF THE ARGUMENT

Prado did not violate the separation of powers doctrine when working for the executive branch through the primary and general elections, because he resigned from the executive branch prior to his inauguration into the legislative branch. The fourteenth paragraph of Davis's affidavit contends that the September primary election is considered the general election in City government. Davis bases this theory on the "disproportionate ratio of Democrats over Republicans in the September primary." (AOB 9-10) According to Davis, candidates that are successful in the primary elections are deemed "elected" as of the September primary, despite the pendency of the general election in November, due to the ratio of Democrats over Republicans in the City. (AOB 9-10)

This theory is Davis's premise for his argument that Prado violated the separation of powers doctrine embodied in Articles I, II and III of the Delaware Constitution. (AOB 10) Davis's separation of powers argument is that Prado contemporaneously served the executive and legislative branches when he continued to work in the City's executive branch while he was deemed an "elected" member of City Council as of the September primaries, despite the pendency of the November general election and the inauguration two months after the general election.

(AOB 10)

Davis's separation of powers argument has three fatal flaws. First, Articles I, II and III of the Delaware Constitution only apply to the three branches of the government of the State of Delaware, not the City of Wilmington. Second, the winners of the Democratic and Republican nominations for the Fifth District were both on the ballot for the November general election, in contrast to other Councilmanic districts where there is no Republican nominee in the primary election. In the latter instances, the Democratic nominee for the district is the only candidate on the ballot in the general election.[11] Third, even if Prado did not have an opponent in the November general election, Prado did not officially become a member of the legislative branch until his inauguration on January 4,2005, by which time Prado had already resigned from his position in the executive branch. For these reasons, Davis's separation of powers argument must be rejected on its merits.

XIII. <u>DAVIS'S QUOTATION TO BARON DE MONTESQUIEU, WITHOUT PROPER ATTRIBUTION, IS INCORRECTLY CONSTRUED AND INAPPLICABLE TO PRADO'S CANDIDACY, NEITHER IN THE QUOTE'S ACCURATE CONSTRUCTION NOR THE QUOTE'S INACCURATE CONSTRUCTION OFFERED BY DAVIS</u>

A. <u>SCOPE OF REVIEW</u>

Prado hereby incorporates the statement of the scope of review set forth in Argument I of this Answering Brief.

B. <u>MERITS OF THE ARGUMENT</u>

Assuming *arguendo* that the eighteen century writings of a French philosophers are binding legal authority in this jurisdiction, neither Prado nor any member of Wilmington City government violated the maxim quoted in Paragraph 15 of Davis's affidavit. (AOB 12) That paragraph quotes, without proper citation, a scattered passage from Baron de Montesquieu, presumably lifted from *On the Spirit of Law*, explaining the need to separate the judicial branch from the executive and legislative branches of government. (AOB 12) Davis then contends that "life and liberty of the subject would be exposed to arbitrary control" if the judicial branch were to be joined with the legislative branch. (AOB 12) Davis offers no explanation of how this contention relates to his scattered quotation of Montesquieu, or any of the issues being appealed to this Court. Moreover, Wilmington City government does not have a judicial branch, therefore, there is no City judiciary to separate from City Council or the Mayor's office. Accordingly, Davis's misquoted reliance upon eighteenth century French philosophy must be rejected on its merits.

## CONCLUSION

Wherefore, for the foregoing reasons, this appeal must be dismissed with prejudice, because Davis's Opening Brief contains no arguments. To the extent that Davis is requesting that this Court exercise appellate jurisdiction to review the final orders of the Board of Canvass of the Superior Court, that request should be denied for lack of jurisdiction, as explained more fully in Argument I. To the extent that Davis is requesting that this Court exercise original jurisdiction to issue summary and/or declaratory judgment, that request should also be denied for lack of jurisdiction, as explained more fully in Argument I. If the ten legal conclusions set forth in the self-executed affidavit appended to Davis's Opening Brief are intended to be Davis's legal arguments on appeal, nine of those ten arguments must be dismissed pursuant to Rule 8, as explained more fully in Argument III, or alternatively, all ten arguments must be dismissed pursuant to Rule 15(a)(vi), as explained more fully in Argument II. If the Court decides to address the merits of these ten procedurally improper arguments, all ten arguments should be dismissed on their merits for the reasons set forth in Arguments IV through XIII, respectively.

CITY OF WILMINGTON LAW DEPARTMENT

Alex J. Mili, Jr. (I.D. #4125)
Assistant City Solicitor
City of Wilmington Law Department
Louis L. Redding City/County Bldg.
800 North French Street, 9th Floor
Wilmington, DE 19801
(302) 576-2175
Attorney for Defendant Below/
Appellee Samuel (Sammy) Prado